UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Cr. No. 24-cr-286 (APM) |
| JULIAN AIRES : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE AND
MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its undersigned attorneys, hereby provides the Court with its motion for a downward departure and memorandum in aid of sentencing. Because the Defendant Julian Aires ("defendant" or "Aires") provided substantial assistance to the United States—specifically, by providing information about bribery of foreign officials in South Africa that contributed to the government's ability to enter into a corporate resolution with the defendant's former business partner—the government respectfully moves for a departure pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5K1.1. Based on the government's U.S.S.G. § 5K1.1 motion and considering the factors set forth in Title 18, United States Code, Section 3553(a), the government requests that the Court impose a sentence of 40 months' imprisonment, a $5,397,677 forfeiture judgment, and $100 special assessment.

I. **Procedural History**

Prior to being charged, the defendant, a United States citizen and resident, voluntarily proffered to the government, providing the government with substantial assistance in the investigation and prosecution of others. The proffers occurred on November 9 and 10, 2022, and November 19, 2023.

1

On June 11, 2024, the government charged the defendant in a one-count information alleging a conspiracy to violate the Foreign Corrupt Practices Act in violation of 18 U.S.C. § 371. On July 15, 2024, the defendant pleaded guilty to the one-count information.

II.   **Offense Conduct**

From in or around January 2016 through at least January 2020, the defendant, together with others, knowingly and willfully agreed to use the mails and means and instrumentalities of interstate commerce, including U.S. bank accounts, to corruptly pay bribes to and for the benefit of officials of the state-owned airline South African Airways ("SAA") and its wholly-owned subsidiary South African Airways Technical ("SAAT") in their official capacities in order to secure an improper advantage for a U.S. aviation services company AAR CORP. ("AAR"), an aircraft component services company based in South Africa of which the defendant was a principal (referenced in the Information as "Company 3"), and others in connection with the award of a five-year aircraft component support contract ("SAAT Contract") and disbursement of payments by SAAT pursuant to that contract.

Separately, the defendant participated in another scheme in or around 2016 to bribe two of the same South African officials and others to obtain and retain airport ground handling services business from SAA for a subsidiary of a Swiss airport services company.

III.  **Sentencing Guidelines**

   A.  **Imprisonment Range**

The Presentence Investigative Report ("PSR") calculations mirror the guidelines calculations agreed upon by the parties in the defendant's plea agreement.

The government agrees with the PSR's calculation of the total offense level under the advisory sentencing guidelines as follows:

2

| U.S.S.G. Section | Levels | Justification |
|---|---|---|
| 2C1.1(a)(2) | 12 | Base Offense Level for offense involving offering, giving, soliciting, or receiving a bribe |
| 2C1.1(b)(1) | 2 | More than one bribe |
| 2B1.1(b)(1) and 2C1.1(b)(2) | 20 | Value of more than $9.5 million but less than $25 million |
| 2C1.1(b)(3) | 4 | Offense involving public official in high-level decision-making or sensitive position |
| 3E1.1(a) and (b) | -3 | Acceptance of responsibility |
| 4C1.1 | -2 | Zero-point offender |
| TOTAL OFFENSE LEVEL | 33 | |

Based upon a total offense level of 33 and a criminal history category of I, the guideline imprisonment range is 135-168 months. However, because of the statutory maximum for the offense of conviction, the effective Guidelines range is 60 months pursuant to U.S.S.G. § 5G1.1(a).

**IV.  Downward Departure under Section 5K1.1 of the Guidelines**

The government moves for a downward departure under Section 5K1.1 of the Guidelines based on the defendant's substantial assistance in the investigation and prosecution of others. The government respectfully requests a sentence of 40 months' imprisonment, a 33% downward departure from the statutory maximum sentence (and an approximately 76% reduction from what would otherwise have been the top of the defendant's guidelines range but for the statutory maximum).

The defendant voluntarily debriefed with the government over three days. In addition to accepting responsibility for his own conduct, the defendant provided additional previously unknown details about the nature and execution of the bribery scheme, including details of conversations and contextualization of key documents. The defendant also corroborated

3

information provided by another cooperating individual. The defendant's cooperation substantially assisted the government's investigation and prosecution of others, including a corporate resolution with the defendant's former business partner, AAR CORP. ("AAR") in December 2024 that resulted in over $55 million in criminal penalty, administrative forfeiture, and SEC disgorgement payments by AAR.

### V. The Factors for Consideration Under 18 U.S.C. § 3553(a)

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Section 3553(a) requires the Court to consider, in addition to the defendant's Guidelines range, the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2). The Court must also consider the types of sentences available, pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(3)-(7).

Here, the § 3553(a) factors and the defendant's cooperation support a sentence of 40 months' imprisonment.

### A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The bribery conspiracy in which the defendant participated is a serious offense, and the defendant played a significant role in it. As the defendant has admitted, the multiyear scheme

involved bribes to South African officials to secure an improper advantage for AAR, the defendant, and others to win a bid for the SAAT Contract. During the bidding process, the defendant met several times with a South African official and obtained confidential information to help AAR and Company 3 win the bid. The defendant and his coconspirators carried out the bribery scheme using cash deliveries and foreign bank transfers, maintaining records concealing the bribe recipient names and referring to the bribe payments as "consulting fees." As a result of the bribery scheme, AAR and Company 3 won the bid. AAR obtained approximately $79.6 million in carrying out the SAAT Contract and paid the defendant's companies approximately $5,397,677, a portion of which was then paid as bribes to three South African officials.

Separately, the defendant participated in another scheme to bribe two of the same South African officials and others to obtain and retain airport ground handling services business from SAA for a subsidiary of a Swiss airport services company. In carrying out this scheme, the defendant participated in drafting a sham contract that was used to conceal and funnel bribe payments to the South African officials.

As to the defendant's personal history and characteristics, the defendant has no criminal history and has complied with the conditions of his release. The defendant has accepted responsibility and plead guilty for his role in this scheme. Neither the defendant's age, education, physical or mental capacity, nor family considerations are such that they should impact the defendant's sentence.

### B. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, to Provide Just Punishment for the Offense, and for Adequate Deterrence

These factors also weigh in favor of the sentence of incarceration recommended by the government. The United States considers bribery that enriches foreign corrupt officials a serious

5

crime with significant negative consequences, both domestically and internationally. The conduct of this defendant undermined the rule of law. Appropriate punishment for such conduct will serve as an effective deterrent. Further, it is particularly challenging to investigate and successfully prosecute international corruption schemes, especially where, as here, the scheme involved individuals and evidence located abroad. This means that when such a scheme is uncovered, and a defendant convicted, a substantial sentence is warranted. *See, e.g.*, *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotations omitted).

For the same reasons, however, the assistance of a cooperating defendant like Mr. Aires can greatly assist the government in understanding and establishing the details of international corruption schemes that would otherwise be unknowable. Such information can strengthen the government's case against other participants in the scheme and assist law enforcement in detecting and deterring such schemes in the future.

**C. To Protect the Public from Further Crimes of the Defendant**

The government submits that this factor is not a central basis for sentencing in this case. The defendant lacked any criminal history prior to this offense, has been compliant with this Court's conditions of release, and has cooperated with the government.

### D. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

The government submits that these factors are not pertinent to the sentencing in this case.

### E. The Kinds of Sentences Available and the Sentencing Range

A term of imprisonment is the appropriate kind of sentence for this crime. As discussed above, the statutory maximum sentence is 60 months' imprisonment, and the government submits that a sentence of 40 months serves the legitimate purposes of sentencing.

### F. Any Pertinent Policy Statement Issued by the Sentencing Commission

There are no policy statements in the Sentencing Guidelines that justify a substantial variance for the defendant.

### G. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

The purpose of the Sentencing Guidelines is to ensure "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1.3. In recent years, numerous bribe-paying defendants with similar records of no criminal history have been convicted of FCPA conspiracies, and their sentences are instructive. For example:

*United States v. Deepak Sharma*, 24-cr-302 (APM) (D.D.C. 2024): This Court recently sentenced, Deepak Sharma, a defendant in a related case who engaged in similar conduct to three years of probation, a $150,000 fine, and 200 hours of community service.

*United States v. Naeem Riaz Tyab*, 19-CR-00038 (D.D.C. 2023): The defendant was indicted along with three codefendants for a bribery and money laundering scheme involving approximately $2 million in corrupt payments to Chadian officials to obtain lucrative oil rights in Chad. The defendant pleaded guilty to conspiracy to violate the FCPA and cooperated with the

government post-indictment. The defendant's guidelines were above the 60-month statutory maximum. The government moved for a sentencing reduction based on the defendant's substantial assistance. The defendant was sentenced to 36 months' imprisonment.

*United States v. Jose Luis de la Paz*, 19-CR-20004 (S.D. Fla. 2019): The defendant, a cooperator who was residing in Ecuador pre-charge and voluntarily submitted himself to the U.S. justice system, was convicted of conspiracy to violate the FCPA for his participation in a scheme to pay bribes totaling approximately $8.25 million to Ecuadorian officials. The defendant and his coconspirators made the corrupt payments for the benefit of Ecuador's state-run oil company, PetroEcuador, in order to secure an improper advantage for the defendant's companies in obtaining contracts and payments from PetroEcuador. The defendant's guidelines were above the 60-month statutory maximum. The defendant was initially sentenced to 36 months' imprisonment, but following a post-sentencing motion for reduction by the government based on the defendant's substantial assistance, the defendant's sentence was reduced to a term of probation.

*United States v. Mauricio Gomez Baez*, 24-CR-20050 (S.D. Fla. 2024): The defendant was the Senior Vice President of the Latin America division of a U.S. company, Stericycle. From at least 2011 to 2016, the defendant directed and authorized a scheme to pay approximately $10.3 million in bribes to government officials in Mexico, Brazil, and Argentina in order to obtain and retain government contracts for medical waste collection. Stericycle, a U.S. issuer, obtained approximately $21.5 million in profits from those contracts. Stericycle paid more than $84 million to resolve parallel investigations by U.S. and Brazilian authorities. The defendant came forward to cooperate with the United States from Mexico, but only after a Mutual Legal Assistance Request from the United States to Mexico and more than two years after the corporate resolution with Stericycle. The defendant pleaded guilty to conspiracy to violate the FCPA. The defendant's

guidelines were above the 60-month statutory maximum. The government moved for a sentencing reduction based on the defendant's substantial assistance. The defendant was sentenced to 7 months' imprisonment.

**H. The Need to Provide Restitution to Any Victims of the Offense**

Restitution is not applicable in this case. There is no identifiable victim who suffered a monetary loss.

## CONCLUSION

The government respectfully submits this motion for a downward departure and memorandum in aid of the Court's sentencing of the defendant, who was found guilty of one count of conspiracy to violate the FCPA.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney
for the District of Columbia

By: */s/ Sarah Santiago*
Sarah Santiago (GA Bar No. 724304)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20539
(202) 252-7249
sarah.santiago2@usdoj.gov

LORINDA I. LARYEA
Acting Chief
Criminal Division, Fraud Section

By: */s/ Katherine Raut*
Katherine Raut (D.C. Bar No. 995065)
Assistant Chief
1400 New York Ave, N.W.
Washington, D.C. 20005
(202) 262-2637
katherine.raut@usdoj.gov